# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**August 6, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**CONSOL MINING COMPANY, LLC,**
**Employer Below, Petitioner**

**v.) No. 26-ICA-47**         (JCN: 2023016274)

**AUSTIN SNUFFER,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Consol Mining Company, LLC ("Consol") appeals the January 12, 2026, order of the Workers' Compensation Board of Review ("Board"), which reversed the claim administrator's order and granted Respondent Austin Snuffer a 41% permanent partial disability ("PPD") award. Mr. Snuffer filed a response.[1] Consol did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

On February 24, 2023, Mr. Snuffer filed an Employees' and Physicians' Report of Occupational Injury or Disease stating he was working for Consol on that same date when he was pinned between a two-man ride and a bolter and was injured from his lower ribcage to the upper pelvis. The medical personnel at Welch Community Hospital signed the physician's section of the report and stated Mr. Snuffer fractured his right sacrum as a result of an occupational injury. While he was in the emergency department at Welch Community Hospital, a CT scan was performed, and Mr. Snuffer was diagnosed with diastases of the pubic symphysis with an adjacent hematoma measuring 3.4 cm with associated right sacral fracture.

On February 26, 2023, Ereny Bishara, D.O., performed an open reduction internal fixation pubic symphysis, percutaneous fixation rate sacral fracture, and an exam under anesthesia with stress fluoroscopy pelvis. Dr. Bishara's post-operative diagnosis was pubic symphysis diastasis and a right zone 2 sacral fracture. On December 5, 2023, Mr. Snuffer

---

[1] Consol is represented by James W. Heslep, Esq. Mr. Snuffer is represented by Robert F. Vaughan, Esq.

1

was seen at West Virginia OrthoNeuro and reported low back pain radiating into the left hip down to the anterior shin and intermittent right hip pain. He stated he had been experiencing these symptoms since his workplace injury and described the pain as aching, stabbing, sharp, burning, and constant. He reported that his pain was worse with lifting, pushing, pulling, bending, squatting, walking, standing, sitting, and laying down. Mr. Snuffer was also using a cane to walk.

Mr. Snuffer's right and left hips were x-rayed at St. Francis Hospital on January 17, 2024, and the impression was no acute bony abnormality and chronic changes, as noted. There was no fracture, dislocation, or significant degenerative changes in the right hip, but some widening of the pubic symphysis was noted. No fracture or dislocation was seen in the left hip but there was minimal acetabular spurring. There were postoperative changes involving the pubic bone not fully included in the field of view, with plate and screw fixation of the superior pubic rami and pubic symphysis.

On March 21, 2024, Valerie Bloom, APRN-CNP, examined Mr. Snuffer, and he reported he used a cane to walk and that his pain had worsened over the last few weeks. NP Bloom assessed him with a sacral fracture and a closed fracture dislocation of pubic symphysis with diastasis. The plan was to schedule Mr. Snuffer for a surgical procedure to remove the sacroiliac joint screw with possible injection of the left sacroiliac joint and removal of the broken hardware. Dr. Bishara treated Mr. Snuffer on April 22, 2024, and noted that he received a sacroiliac joint injection on March 21, 2024. At his appointment in April of 2024, Mr. Snuffer was again weight-bearing with a cane and reported dull, throbbing pain. He stated that his pain improved, and the injection helped the left hip. He denied any new falls, injuries, or numbness. X-rays of the pelvis were performed and showed removal of hardware with the exception of a screw fragment remaining on the left ilium. Further, some mild degenerative changes of the sacroiliac joint on the left were seen, but no evidence of any change in alignment or widening of the sacroiliac joints bilaterally.

On August 30, 2024, Hicks Manson, M.D., performed an independent medical evaluation ("IME") at the request of Consol. Mr. Snuffer reported burning, stabbing pain in his lower back that radiated down past his knees and was more severe on the left side. He further reported that these symptoms worsened with any activity and improved with rest and lying down. His subjective improvement of symptoms to date was 20%. Dr. Manson noted that Mr. Snuffer suffered a right tibial plateau fracture and was non-weightbearing to the right leg, which confounded the physical examination. Based on his physical examination and medical record review, Dr. Mason opined that Mr. Snuffer suffered a traumatic injury but that no further formal medical treatment or diagnostic evaluations were required. He opined that Mr. Snuffer had reached maximum medical improvement ("MMI") from the pelvis fracture and subsequent open reduction and internal fixation. Dr. Manson provided a permanent impairment rating utilizing the AMA Guides to the Evaluation of Permanent Impairment, Fourth Edition ("the Guides") and opined that a healed symphysis pubis fracture without displacement or without residual signs results

in 5% whole person impairment ("WPI") and a sacrum fracture with residual signs results in a 10% WPI, which is a combined WPI of 15%. On September 17, 2024, the claim administrator awarded Mr. Snuffer a 15% PPD award based on Dr. Mason's IME. Mr. Snuffer protested this decision.

On February 26, 2025, Syam Stoll, M.D., performed an IME at the request of Mr. Snuffer's counsel. Mr. Snuffer reported issues with mobility, such that he uses a cane to walk. Other issues Mr. Snuffer reported included the following: pain in his lower back and legs, which was worse on the left side; burning and stabbing pain in the middle of his back to the right side and down his right thigh; tingling across his back and right buttock area with increased sensitivity; and a recent fall. Dr. Stoll noted that Mr. Snuffer underwent a surgical procedure in July 2024 after he lost his balance and fell, which resulted in a right tibial fracture. Based upon his physical examination and medical records review, Dr. Stoll assessed the following conditions: an unspecified fracture of the sacrum; traumatic rupture of the symphysis pubis; fracture of other parts of pelvis; radiculopathy in the lumbar region; other spondylosis, lumbar region; sprain of ligaments of lumbar spine; and contact with mining and earth-drilling machinery.

Dr. Stoll stated that he was unaware whether the July 2024 tibial surgery and subsequent physician therapy were covered under this claim, but it was his medical opinion that the fall was a result of the injuries he sustained in this claim. Using the Guides, Dr. Stoll opined that Mr. Snuffer had a 15% WPI for the separated or widening pubic symphysis and a 10% WPI for the Zone 2 sacral fracture, yielding a 24% WPI for the pelvic fractures. He next found a 13% WPI for the lumbar spine and 8% WPI for the right hip. Regarding the right hip impairment, Dr. Stoll explained that Mr. Snuffer developed trochanteric bursitis in the hip as a result of the injury, and his rating was based on loss of motion. Additionally, Dr. Stoll found 4% WPI for the left hip. After applying the Combined Values Chart in the Guides, these findings yielded 41% WPI. He stated that this formulation provided the greatest impairment, at 41% WPI, versus the 20% WPI for gait derangement.

Dr. Stoll also reviewed Dr. Manson's IME and disagreed with many of Dr. Manson's findings, including his range of motion measurements, his assessment of Mr. Snuffer's current condition, his impairment formulation related to pelvic fractures, and his failure to include an impairment for the lumbar spine, neurological deficits, bilateral hip deficits, or gait derangement. In sum, Dr. Stoll believed Dr. Manson's impairment rating underestimated Mr. Snuffer's true impairment and was invalid.

On September 9, 2025, David L. Soulsby, M.D., issued an IME report at the request of Consol's counsel. Dr. Soulsby assessed diastasis symphysis pubis and a right sacral fracture, which were related to the compensable injury. He also assessed lumbar degenerative disc disease with lumbar foraminal stenosis and mild L5 radiculopathy on the right. He stated that there was a reasonable medical probability that the pre-existing lumbar

spine condition was aggravated by the compensable pelvic injury and subsequent derangement of his walking. As a result, Dr. Soulsby opined that these conditions were related to the compensable claim. Dr. Soulsby found Mr. Snuffer reached MMI and had a combined 13% WPI for the lumbar spine, 10% related to the sacroiliac injury, and 5% related to the symphysis injury, yielding a 26% WPI. He stated that if he were only to consider the injuries directly related to the pelvis, the appropriate rating would be 15% WPI. On January 12, 2026, the Board entered an order reversing the claim administrator's order and granting Mr. Snuffer a 41% PPD award. It is from this order that Consol now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Consol asserts one assignment of error and argues the Board erred in increasing Mr. Snuffer's PPD award based on Dr. Stoll's IME because his report improperly rated non-compensable conditions in the right and left hips and his impairment rating for the pelvic fracture was three times greater than any other evaluator's rating. We disagree. This Court "will not reverse a finding of fact made by the Workmen's Compensation Appeal Board unless it appears from the proof upon which the appeal board acted that the finding is plainly wrong." *Plummer v. Worker's Comp. Div.*, 209 W. Va. 710, 712, 551 S.E.2d 46, 48 (2001) (citing Syl., *Rushman v. Lewis*, 173 W. Va. 149, 313 S.E.2d 426 (1984)). Further, the plainly wrong standard "presumes an administrative tribunal's actions are valid as long as the decision is supported by substantial evidence." *Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022), *rev'd on other grounds*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

4

In this case, the Board found Dr. Stoll's report and impairment rating to be the most reliable and credible. The Board noted that Drs. Stoll and Soulsby both found a 13% WPI related to the lumbar spine and a 10% WPI related to the sacral fracture. While Drs. Stoll and Soulsby disagreed on the WPI ratings for the pelvic fracture, the Board relied on Dr. Stoll's 15% impairment rating because it found that he provided a thorough analysis of the medical treatment records. For instance, the Board noted that Dr. Stoll explained that the x-rays of the right and left hips performed on January 17, 2024, revealed some widening of the pubic symphysis, which caused him to place Mr. Snuffer in a higher category for the pelvic fracture than did Dr. Soulsby. The Board also found it significant that Dr. Soulsby evaluated Mr. Snuffer more recently than Dr. Stoll but failed to discuss Dr. Stoll's differing impairment ratings related to the symphysis pubis or left and right hips. The Board found Dr. Stoll's explanation for providing impairment for the hips reliable and credible because his physical examination found reduced range of motion in the hips and trochanteric bursitis resulting from the injury. Finally, the Board held that Dr. Manson's PPD rating was not reliable or credible because he did not consider the 2024 medical records related to the lumbar spine condition and did not diagnose a lumbar spine condition when both Drs. Stoll and Soulsby diagnosed and rated lumbar foraminal stenosis and L5 radiculopathy.

On appeal, Consol argues the Board should not have relied on Dr. Stoll's impairment ratings because he improperly rated non-compensable injuries. However, Consol failed to provide the compensability orders to the Board as the Board noted in its order. As a result, it is unclear which conditions were deemed compensable in this claim, and Consol has failed to show error in the Board's decision. As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). The Board's order provides adequate reasoning as to why it agreed with Dr. Stoll's impairment ratings, and we defer to the Board's determinations of credibility and weighing of the evidence. *See Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 306, 465 S.E.2d 399, 408 (1995) ("We cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact. We must defer to the ALJ's credibility determinations and inferences from the evidence . . . ."). With these deferential standards of review in mind, we cannot conclude that the Board was clearly wrong in finding Mr. Snuffer was entitled to a 41% PPD award.

Accordingly, we affirm the Board's January 12, 2026, order.

Affirmed.

**ISSUED:** August 6, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White